404

In the Matter of BERT BAUMAN et al., Appellants, *v.* LOUIS FUSCO et al., Respondents.

In the Matter of IRWIN I. BROOKS et al., Appellants, *v.* CHARLES A. BUCKLEY et al., Respondents.

In the Matter of GERALD P. GOLDSMITH et al., Appellants, *v.* LOUIS FUSCO et al., Respondents.

First Department, July 8, 1965.

*Sidney H. Rosen* of counsel (*Murray A. Gordon* with him on the brief), for appellants.

*Eugene L. Sugarman* of counsel (*Eugene L. Sugarman* and *S. Philip Cohen,* attorneys), for respondents.

*Per Curiam.* Absent a dissenting opinion herein, we would affirm the order appealed from upon the opinion of SPECTOR, J.,

at Special Term. The dissenting opinion — as do the parties in these cases — acknowledges that the county committee at its organization meeting on June 18, 1964 had the power to adopt a new rule as to the boundaries of the 7th and 12th executive districts. But the appellants would have those rules apply prospectively in 1966 when a new county committee would be elected. It is not disputed that the executive committee of the Bronx County Democratic Committee exists by virtue of the rules of the county committee and is not a creation of the Election Law. (See *Matter of McGlynn* v. *Dixon*, 2 N Y 2d 68; *Matter of Licitra* v. *Power*, 10 A D 2d 996, 997, affd. 8 N Y 2d 871.)

Justice STEUER would require that if there is to be a change by the county committee in the boundaries of the 7th and 12th executive districts, all the qualified voters in those districts should "have the opportunity to express their preference at the polls". This would call for a new election of county committeemen from the 7th and 12th Assembly Districts.

Such a solution must be rejected. Primarily, appellants eschew any such proposed relief. What appellants seek — which not even the dissent will permit — are new elections of executive committee members from the 7th executive district east and the 12th executive district west in accordance with the rules that existed on June 2, 1964 when the primary for the election of county committeemen was held. In short, what is sought is an election on the basis of the old county committee rules. Implicit in Justice STEUER's dissent is that such relief cannot be granted, for the reason that any action subsequent to the advent of the new county committee must conform to the rules of the new county committee. With this proposition, we, of course, agree.

Secondly, the dissent, in suggesting a new election, predicates the necessity therefor on the untenable premise that when "the new district was created, there were no county committeemen for that district". But under subdivision 1 of section 12 of the Election Law, the county committee of each party "shall be constituted by the election in each election district within such county of at least two members". Thus, county committeemen are elected from election districts and not from executive districts. The validity of the election of the county committeemen from their respective election districts on June 8, 1964 is not challenged. Subsequent grouping of county committeemen into executive districts is a matter of party machinery wholly within the power and province of the county committee.

The orders should therefore be affirmed, without costs or disbursements.

STEUER, J. (dissenting). The consolidated appeal concerns representation on the executive committee of the Bronx County Democratic Committee. Two districts, the 7th and 12th, are involved. The questions in regard to both are identical, so, for ease of expression, only one, the 7th, will be discussed, it being understood that everything said applies with equal force to the other.

The executive committee of the Bronx County Democratic Committee is a creature of the rules of the county committee. Its existence, as well as the method of obtaining membership on it, is governed by the rules of the committee and the action taken pursuant to those rules. The county is divided into executive districts, and the executive committee, except for certain ex officio members, are representatives of those districts. The rules provide for the boundaries of the districts. Generally speaking, these boundaries corresponded to the statutory Assembly Districts. The 7th Assembly District, up to and including the June 1964 primary, was divided into two executive districts, the 7th executive district east and the 7th executive district west.

In that primary there was a contest for leadership in certain of the districts. The contestants were popularly styled the regular and reform groups. There was such a contest in the 7th district east but not in the 7th district west.

A member of the executive committee is chosen in the following way: The county committeemen elected in the primary meet in their district. They select two proposed members of the executive committee, one male, one female. These nominations are submitted to the existing executive committee, which either approves or disapproves of the nominations. If approved, the names are submitted to the county committee of the entire county at its organization meeting and, if elected, the nominees become members of the executive committee. In theory the electorate has no part in the selection of executive members, but in practice the candidates for county committeeman are pledged to the support of named persons for executive member, and this is widely known to the voters.

In the 7th district east, the voters elected a majority of committeemen belonging to the reform group. In the 7th district west, the reform group made no nominations and the regular group elected their candidates. The number of committeemen

in the west district exceeded the number in the east district by a substantial margin. The county committeemen for the east district selected the petitioners as nominees for executive membership; the county committeemen in the west district selected the respondents.

On June 8, 1964, the executive committee met. That body purported to abolish the two districts in question and make a new 7th district, which embraced both the former east and west districts, and approved the respondents as nominees for executive members of the new district. This court held that this action was illegal in that the executive committee had become *functus officio* and its powers were limited to such steps as were essential to carry on activities until the new executive committee was seated (21 A D 2d 470).

On June 18 the county committee held its organization meeting. It adopted a new rule as to the boundaries of the district substantially in accord with the action previously taken by the executive committee. It thereupon approved the respondents as members of the executive committee representing the new district.

Petitioners concede that the county committee had the right to adopt the rule as they did. What they contend is that neither the adoption of the rule nor the subsequent approval of the respondents makes them executive members. And in this they are patently correct. Of the three steps which provide the requirements for the selection of an executive member, none was performed.

Up until the adoption of the change in the rules creating a new 7th district, there was no such district, nor by definition could there be any selection of a candidate from that district by the county committeemen of that district. It follows that there could be no approval by the executive committee nor election by the county committee, as there could be no nominees from a nonexistent district. A purported meeting held June 15 of all the committeemen of the new 7th district, and at which respondents were purportedly selected, does not change this. A county committeeman may not vote for an executive member for a district for which the committeeman was not elected (*Matter of Broderick* v. *Knott,* 197 Misc. 114, affd. 276 App. Div. 960), and this was precisely what was attempted to be done.

It is argued that despite this the present application is merely an exercise in futility. The argument goes that as of now, and dating from June 18, there is only one 7th district. Assuming

that neither petitioners nor respondents can be seated as executive members for that district, the vacancy can be filled. Due to the preponderance of committeemen pledged to the regular organization candidates in the new district, the selection of the respondents as nominees for the position would be assured and, for like reasons, the executive committee and the county committee will approve the selection. So that all that would be accomplished by unseating the respondents would be the necessity of holding three meetings, the outcome of which is a foregone conclusion.

I believe the problem goes deeper than this. When the new district was created, there were no county committeemen qualified to vote for executive members for that district, and unless and until a new election for county committeemen is held, that district cannot be represented on the executive committee.* Not only is this the only holding which the rules of the county committee permit, it is also the only one by which those rules can be held to conform to the Constitution of the State. The initial statement of that Constitution, "No member of this state shall be disfranchised" (art. I, § 1), applies to the right to vote and to have the vote counted in a primary as well as a general election (*People ex rel. Hotchkiss* v. *Smith*, 206 N. Y. 231, 242; *Matter of McManus* v. *Board of Elections*, 185 Misc. 489). Furthermore, not even the Legislature, let alone a political party, can enact regulations which, under the guise of regulating procedure, effectually deprive qualified voters from exercising the franchise (*People ex rel. Hotchkiss, op. cit.*). Clearly this maneuver is designed to nullify the votes of a clear majority in what was the 7th district west. They are to be represented by an executive member affiliated with a group that they repudiated. If the district is to be changed, all the qualified voters in that district should have the opportunity to express their preference at the polls rather than have the court make a calculation based on conditions which no longer exist. For who is to say, if the election is contested in the entire district, as it was in a former portion of it, what candidates will prevail?

I vote to reverse the order dismissing the petition and to grant the petition in full.

---

* Subdivision 1 of section 12 of the Election Law referred to in the majority opinion, does not affect the situation. The section merely prescribes the district from which county committee members are to be elected. It does not deal with the voting rights of such members once they are elected, nor gives them any such voting rights in extension of the rules (*Matter of Splain* v. *Dixon*, 3 Misc 2d 965, affd. *sub nom. Matter of Murphy* v. *Dixon*, 2 A D 2d 820).

BREITEL, J. P., VALENTE, MCNALLY and STEVENS, JJ., concur in *Per Curiam* opinion; STEUER, J., dissents in opinion.

Three orders, entered on February 10, 1965, affirmed, without costs and without disbursements.